MATTHEW ROBINSON *v.* MARIE R. ATTERBURY ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and ALCORN, Js.

Argued February 11—decided May 24, 1949.

*Warren F. Cressy,* for the appellant (plaintiff).

*Samuel Reich,* with whom was *George A. Saden,* for the appellee (named defendant).

JENNINGS, J.   The plaintiff replevied certain personal property from the named defendant, hereinafter called the defendant.   He alleged ownership and right to immediate possession.   The defendant filed a denial and, in a counterclaim, alleged ownership and right to immediate possession.   She claimed a return of the goods and damages.   Judgment was for the defendant on the complaint and counterclaim.   The plaintiff has

appealed. To prevail he must rely on the strength of his title rather than on the weakness of the defendant's and must prove a right to immediate possession. *M. Itzkowitz & Sons, Inc.* v. *Santorelli,* 128 Conn. 195, 198, 21 A. 2d 376. Where a plaintiff's right of action rests upon a right of possession by virtue of a special property, the complaint must set forth the facts upon which the special property depends so as to show that at the time the plaintiff replevied the goods he was entitled to their possession. General Statutes, Rev. 1930, § 5952 (Rev. 1949, § 8261). There were no such facts alleged and there was no claim of special property in the goods included in the plaintiff's complaint.

The case presents essentially a factual question except as to certain rulings on evidence. It was necessary to print substantially all of the very extensive evidence to support the claim that the finding should be corrected, but it would serve no useful purpose to consider the attacks upon it in any detail. We have made the few corrections to which the plaintiff is entitled.

Plaintiff and defendant met in 1939 and lived together at the plaintiff's request in various places in and around New York until he went overseas as a major in the armed forces in January, 1943. They were in love with each other and intended to be married as soon as the defendant's divorce decree became final. This did not occur until just after the plaintiff left the country and the proposed marriage never took place. Each of the parties subsequently married.

In 1939 the defendant, who had been an interior decorator, owned a large amount of furniture, antiques and bric-a-brac. A part of this was in her house, a part in storage and a part on consignment in an antique shop. Eventually that part of these goods which is the subject of this suit was used to furnish a house in Stamford owned by the plaintiff and occupied by him

and defendant at the time of their separation. He admitted that every item originally belonged to the defendant and claimed each by purchase or gift from her. The defendant, on the contrary, claimed the goods were hers. The basic question was one of credibility. The trial court heard testimony which covers about 250 pages of the printed record mainly concerned with this question and concluded that the defendant did not sell or make a gift of any of the items to the plaintiff or his representatives. The title was in the defendant.

The statute makes "a right to . . . immediate possession" one of the conditions of replevin. General Statutes, Rev. 1930, § 5942 (Rev. 1949, § 8251). When the parties occupied the Stamford house, engaged to marry, the furniture was in their joint possession. When the defendant left the house and married another person, the situation was radically changed. The basis of any right of joint possession was destroyed and the plaintiff's right of possession no longer existed, regardless of the situs of the furniture. The defendant as its owner then became entitled to its immediate possession. *D'Addario* v. *Abbott,* 128 Conn. 506, 508, 24 A. 2d 245.

The plaintiff contends that the defendant is estopped by her conduct from claiming title and right to possession and seeks to have many paragraphs of his draft finding added to the finding to enable him to raise this issue. In general this contention is based on the fact that he gave the defendant considerable sums of money and on his claim that he rebuilt the Stamford house with the use of her furniture specifically in mind. He is seeking to recover furniture in the possession of the defendant. A sufficient answer to this claim is that equitable estoppel "is available only for protection, and cannot be used as a weapon of assault." *Dickerson* v. *Colgrove,* 100 U. S. 578, 580, 25 L. Ed. 618, quoted

in *Lake Garda Improvement Assn.* v. *Lake Garda Co.,* 135 Conn. 240, 242, 63 A. 2d 145.

Another purpose sought in claiming additions from the draft finding is apparently to prove that some of the money given the defendant by the plaintiff was in payment for her furniture. This was denied by the defendant, was a simple question of fact and was decided against the plaintiff. As stated above, the relationship of these parties was not on a business basis and the testimony with reference to many of the numerous checks was indefinite. The reading of the testimony necessitated by the attacks on the finding shows that the great bulk of the large expenditures was for living expenses, the bills for which were customarily paid by the defendant. None of the additions sought to which the plaintiff is entitled would advantage him.

The plaintiff claimed that his cross-examination of the defendant was unduly restricted. None of the evidence excluded would have contradicted any testimony given by the defendant, nor in itself would have shown conduct on her part indicating a lack of veracity. The claim of the plaintiff was that the questions were preliminary to an examination into conduct of the defendant since her arrival in this country in 1927 which would have shown that she had been doing to others what the plaintiff claimed she did to him. Past conduct, to be the proper subject-matter for cross-examination to affect credibility, must be such as would indicate a lack of veracity; *State* v. *Schutte,* 97 Conn. 462, 473, 117 A. 508; *Lionetti* v. *Coppola,* 115 Conn. 499, 503, 161 A. 797; and the trial court has a reasonable discretion as to the extent to which such cross-examination will be permitted, particularly when the result might be to raise collateral issues. *Spiro* v. *Nitkin,* 72 Conn. 202, 205, 44 A. 13; *Shailer* v. *Bullock,* 78 Conn. 65, 70, 61 A. 65; *State* v. *Esposito,* 122 Conn.

604, 609, 191 A. 341; *Eamiello* v. *Piscitelli,* 133 Conn. 360, 370, 51 A. 2d 912. The plaintiff did not claim that he would offer evidence as to any past conduct of the defendant which would indicate a lack of veracity on her part; the apparent purpose was to show that she was of bad moral character, and the evidence would very likely have raised many collateral issues. The trial court did not err in excluding the questions. The evidence which was admitted in *Mitchell* v. *Wyckoff,* 122 Conn. 48, 61, 186 A. 709, the case particularly relied on by the plaintiff, was claimed for the purpose of showing that the witness' course of life had so weakened his mental capacity as to affect the reliability of his testimony. A-94 Rec. & Briefs 505.

A procedural question remains for discussion. After the plaintiff left for overseas the defendant continued to occupy the Stamford house. The plaintiff appointed his sister, Elizabeth Robinson, a practicing lawyer in New York, his attorney in fact. The latter and the defendant lived in the Stamford house together in 1943 but friction developed between them and the defendant planned to move to New York. She could not find an apartment. When she returned to the Stamford house in September, the locks had been changed and she was locked out, denied admittance and threatened with arrest by Miss Robinson. She demanded her furniture and was refused. On March 15, 1944, she replevied the goods in question from Miss Robinson. Before they had been unloaded from the trucks in which they had been carried away, Miss Robinson, acting for her brother, replevied the same goods from the defendant and put them back in the house, where they remain.

The two actions, *Atterbury* v. *Robinson* and *Robinson* v. *Atterbury,* were assigned for trial together. The trial court ruled, in effect, that all of the material issues

could best be settled by trying the suit of *Robinson* v. *Atterbury* first. This ruling was within its discretion. The claim of the plaintiff that this subjected him to an undue burden of proof is without merit. He brought the replevin, alleged title and right to possession and had the burden of proving both. *D'Addario* v. *Abbott*, 128 Conn. 506, 508, 24 A. 2d 245. The defendant had the burden of proof on her counterclaim. As a practical matter, if the plaintiff feared the burden of proof, all he had to do was to let the defendant keep the goods and defend against her replevin suit. The burden in that case would have been on the defendant. The court held both to their obligation in this regard. Much of the confusion in this connection resulted from the bringing of the cross-replevin. This is improper practice because it results in just the situation which confronted the court in this case. *Larsen* v. *Nichols*, 62 Minn. 256, 64 N. W. 553; *Hines* v. *Allen*, 55 Me. 114; *Sartain* v. *Dixie Coal & Iron Co.*, 150 Tenn. 633, 637, 266 S. W. 313; 46 Am. Jur. 27. Since the plaintiff brought the cross-replevin, he must take the consequences.

As stated at the outset, the real question is one of fact, based primarily on credibility, and the conclusion of the trial court may not be disturbed.

There is no error.

In this opinion the other judges concurred.